## Case No. 6,637.

### HOLMES v. DODGE.

[Abb. Adm. 60.] [1]

District Court, S. D. New York. Aug., 1847.

SEAMEN—WAGES—COMMISSIONER—REFERENCE—AWARD.

1. Where the respondent, in an action for a seaman's wages, relies upon a payment made in advance to the shipping agent by whom the libellant was shipped, the burden of proof is upon the respondent to show affirmatively, not only that the payment was made, but also that the shipping agent was authorized by the libellant to receive it.

2. Where, upon reference to a commissioner, there is a conflict of testimony upon a question of fact, the court will adopt the conclusion of the commissioner, unless there is a palpable preponderance of evidence against it.

[Cited in Egbert v. Baltimore & O. R. Co., Case No. 4,305; The Mayflower, Id. 9,345.]

3. As a general rule, a reference to a commissioner, in a suit for wages, is a regular and necessary step on the part of the libellant, incidental to the prosecution of the action, and cannot be the subject of an independent charge in a bill of costs.

[Cited in The Beaver, Case No. 1,200.]

4. Where, however, the reference is solely for the benefit of the respondent, the court will modify the order of reference so as to require the extra costs incurred to be defrayed by him. Such modification must be asked for on obtaining the order of reference.

5. Under rule 3 of the supreme court, the principal and his surety on the bond or stipulation given upon an arrest in personam, stand upon the same footing.

[Cited in U. S. v. Seven Barrels Distilled Oil, Case No. 16,253; The Wanata, 95 U. S. 617.]

[See Gaines v. Travis, Case No. 5,179.]

6. The award which grants execution upon a final decree, authorizes it against all parties embraced in the decree; and there is no necessity of special notice to the surety of respondent of an application for an execution against him.

This was a libel in personam, by Allen Holmes against A. P. Dodge, master of the brig Magdala, to recover wages earned on board the brig. The libel claimed wages for one month and twenty-eight days' services, at $18 per month. The claim was admitted by the answer, which set up as a defence the following items of payment:—

| | |
|---|---:|
| Cash advanced to libellant or order.. | $18 00 |
| Advances before sailing, in clothing, &c | 10 20 |
| Hospital money...................... | 65 |
| Cash paid to libellant's proctor....... | 5 95 |
| | $34 80 |

On the hearing, no evidence was offered to show the first, third, or fourth payments. Evidence of articles of clothing furnished, without showing prices, was given. The court decreed in favor of the libellant upon his claim, and referred it to a commissioner to report the amount due. On the hearing before the commissioner, the following facts appeared. One Anderson, keeper of a sailors' boarding-house, had previously shipped a man on board the Magdala, who deserted be-

fore the ship sailed. This man was indebted to Anderson. Upon his desertion, Anderson caused the libellant, Holmes, to be arrested and taken on board the vessel, and he was there induced to sign the shipping articles. The sum of eighteen dollars was paid to Anderson, which constituted the first item of payment above stated; but there was a conflict in the testimony of the two witnesses examined upon the question, whether this payment was made with libellant's consent or without it. The commissioner adjusted the libellant's claim at $34.80; and upon other evidence before him, allowed the first, third, and fourth items of payment claimed, amounting to $16.80. But he rejected the item of $18 paid to Anderson under the circumstances already mentioned, and reported that that sum was still due to the libellant. The respondent filed exceptions to this report.

E. C. Benedict, in support of the exceptions.

I. The payment of one month's wages in advance is to be presumed, it being the uniform custom to make such payment.

II. The shipping articles recite a payment of the advance.

III. The witness Pike testifies that he saw the money paid to Anderson, and that it was so paid by the express direction of libellant. This testimony is, upon the whole, confirmed by that of Morris.

Alanson Nash, in opposition, contended that there was no sufficient evidence to show that Anderson was authorized by Holmes to receive the payment of his wages.

BETTS, District Judge. I think the decision of this case depends upon the comparative credit to be given to the witnesses Pike and Morris. Pike states that he saw the advance of $18 paid to Anderson, and that the libellant told witness that Anderson was to receive it for him. Morris says that he was present, and that no money was paid to Holmes, or directly for him; and that the money collected by Anderson was the advance to be made to the seaman in whose place libellant shipped.

The story, as told, raises a strong presumption that the landlord, Anderson, undertook to make the advance payable to the libellant satisfy a like sum which he, Anderson, expected to have received of the other man he had shipped, but who deserted, probably in his debt to that amount. He fails, however, to prove that Holmes directed such application of the money, or that he consented that the previous advance of that sum, if made to Anderson on account of the deserter, should be charged to him and be regarded as his advance.

It is highly probable, upon the confused statement given of the transactions, that Holmes stood in Anderson's debt, and if his advance passed, with his consent, into Anderson's hands, that it would all have remained

there. But the accounts between these two men are not to be settled in this action; nor are the facts sufficiently stated to enable the court to say, with confidence, where the probable equity is. It is, however, clear, that the law casts upon the respondent the burden of showing the payment of the advance to libellant, or to his authorized agent; and that if a payment to a third person on behalf of the libellant is relied upon, the authority of such third person to receive the payment in the name of the libellant must be affirmatively shown. And as at best, the testimony is balanced on this point, the respondent must fail in this defence.

Independently of that consideration, it is not usual to reverse the judgment passed upon matters of fact by a tribunal or officer, having had opportunity for a personal examination of witnesses in each other's presence. A court, reviewing the evidence as reproduced upon paper, possesses but imperfectly the means of determining the relative credit of witnesses who stand in conflict as to facts; and it is always safer, when the preponderance is not palpable, to rely upon the discrimination and conclusions made by those who have seen and heard the witnesses, face to face, than to attempt to settle that point by weighing the written report of the testimony.

Upon both of these considerations, I shall adopt the decision of the commissioner as to the advance due to the libellant, and shall hold that the exceptions are not sustained. The decree will therefore be as follows:— Exceptions to the report of the commissioner having been taken in this cause on the part of the respondent, and it appearing to the court that the testimony before the commissioner, on the point in controversy, was in direct conflict, and that on a personal examination and hearing of the witnesses, he gave credit to one witness and discredited the opposing witness, and it not appearing that the collateral facts or circumstances afford just and satisfactory cause for changing the decision of fact made by the commissioner: It is ordered by the court, that the exceptions taken to the report filed in this cause be disallowed and overruled, with costs to be taxed.

The cause came up again soon after, upon an appeal taken by the respondent from the taxation of costs by the clerk, under the above decree. The libellant had charged and procured to be taxed a bill of $17.25, for costs of reference, independent of the $12 allowed the libellant in summary causes by the standing rule of court. Dist. Ct. Rules, 165, 176. The respondent appealed from that taxation.

BETTS, District Judge. As a general principle of practice, a reference to a commissioner in suits for wages is a regular and necessary step on the part of the libellant in the prosecution of the action. The court rarely takes the account between the seaman and the ship to determine the amount due, but as an ordinary incident to the suit, the computation is made by a commissioner, and if a reference were not moved for by the libellant, it would usually be directed by the court as an essential proceeding in the cause.

It is undoubtedly true that instances may occur in which the reference is solely on the motion of the respondent and for his benefit, the claim of the libellant being definitely ascertained in amount by his proofs upon the hearing. In such cases the court will, upon request, modify the order of reference, making it one granted in behalf of the respondent, and perhaps adding, also, in summary cases, a provision, that the extra costs incurred shall be defrayed by him. This is within the spirit of rule 171 of this court in respect to costs in summary actions, which imposes on the party obtaining a privilege the special costs created thereby.

The present case was one in which such a qualification of the usual order would have been proper, had it been asked for at the time the order was granted. Upon the minutes, however, the order now appears to have been moved for and taken in the usual mode; and under such circumstances, in my judgment, the libellant is only entitled to a single bill of costs, and such bill, in summary actions, is limited to $12, exclusive of disbursements. Dist. Ct. Rules, 176. The reference, like an assessment by the clerk or jury of inquiry in common-law procedures, becomes an incident to the cause, to be charged for as an item in the general bill of costs. There is nothing before me in these proceedings which will justify treating this case as an exception to the general rule, and the objection taken to the allowance the expenses of the reference, independent of the costs of the cause, must accordingly prevail.

The cause came before the court for the third time, a few days later, upon a motion for execution against the stipulator, based upon an affidavit of one of the proctors, that execution on the final decree had issued against the respondent, and had been returned unsatisfied.

Alanson Nash, for the motion.

W. R. Beebe, in opposition, contended that an order to show cause should have been obtained and served upon the stipulator, and that for want of such notice, this proceeding was irregular.

BETTS, District Judge. The practice of the district court, in such cases, has been well understood and settled, under the standing rules of the court. Betts, Adm. 27. After final decree against the principal, an order may be taken, as of course, requiring the stipulator to fulfil his stipulation, or show cause in four days why execution should not issue against him. This order is to be served upon

the proctor of the principal party, and if no cause be shown, pursuant to its direction, a summary decree is rendered, and execution awarded thereon against the stipulator. Dist. Ct. Rules, 145.

The rules of the supreme court place the principal and his surety upon bond or stipulation, given on an arrest in personam, upon the same footing. The engagement of the stipulator is, that the principal party shall appear in the suit and abide by all the orders of the court made in the cause, whether interlocutory or final, and that he shall pay into court the money awarded by the final decree. And upon such bond or stipulation, summary process of execution may and shall be issued against the principal and sureties, to enforce the final decree so rendered. Sup. Ct. Rules, 3. These stipulations may be taken by the marshal, or before a judge or a commissioner. Sup. Ct. Rules, 3, 5.

In the present case, the surety executed a bond to the marshal, pursuant to the terms of rule 3 of the supreme court The effect of the bond, and the remedy upon it, must accordingly be determined by the true import of that rule. It seems to me manifest that the court designed by the rule to place the surety precisely in the situation of the principal, regarding his engagement a legal assumption of the responsibility of the respondent. The final decree is to be enforced against both, by summary process of execution, and accordingly, the method by which the process against the principal is obtained, is the proper one to be pursued in procuring it against the surety also.

As an order to show cause is not required in the district court in respect to the principal, but execution is awarded by an order as of course, the distinction of procedure which before obtained in that court in respect to the surety, is abrogated by this rule of the supreme court, and one order is all that is necessary. The same award which grants execution on the decree, grants it as respects all parties bound by it; and as that order may be summary, it of course may be founded upon the decree itself, without any intermediate steps or notice. The term "summary proceeding," imports a step taken by the direct action of the court, and unless regulated by some condition or qualification of law, it will be free from delay or formalities. As summary arrests and summary judgments or decrees are, in contemplation of law, independent of the checks and formalities attendant upon ordinary proceedings of. like character; so, also, a summary execution must be considered as the immediate award of that process after final decree rendered, and as subject to no other condition than that it be directed by the court.

The rule of the supreme court is not limited to the granting a power to give summary execution as a favor; it is imperative upon all the courts. They are required to issue the process against principal and sureties to en-

force the final decree. The libellant is accordingly now entitled to that process upon this motion. He ought, however, to have taken the order for it together with that obtained against the principal, and the order now made must be without costs.